UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:04-CR-00427-RCJ-RJJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| BECKHAM BAKER, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on Defendant's Motion to Reconsider Suppression of Seized Evidence (# 43-1). The Court has considered the Motions, the pleadings on file, and oral argument on behalf of all parties. Defendant's Motion to Reconsider Suppression of Seized Evidence (# 43-1) is denied.

**BACKGROUND**

On July 9, 2004, Defendant chatted over the internet with thirteen-year-old Stephanie Lasiter and her friend, Alicia Cramer. Defendant, then twenty-five years of age, made arrangements to meet with Stephanie and Alicia at a local pool, where he stayed with the girls for over three hours. At the pool, Defendant reportedly tried to hold both girls' hands and grabbed Stephanie around the waist.

Later that day Stephanie's family discovered the on-line relationship and called the police. Before the police arrived, Sherri Allen, a friend of Stephanie's family, covertly

1  replaced Stephanie in chatting with Defendant. Ms. Allen requested that Defendant send a
2  picture of himself, and Defendant complied by emailing a picture of himself completely nude
3  but turned to the side, so only his back and buttocks were exposed to the camera. Ms. Allen
4  also claims Defendant told her that he worked at a hotel, and he invited Stephanie to meet
5  him there, as she owed him kisses.

6  Through phone records, the police traced Defendant to a home in Las Vegas. A photo
7  lineup identification by Stephanie confirmed that the person living at Defendant's address
8  was the same individual Stephanie met at the pool.

9  Based on this information, Officer D. Boucher of the Las Vegas Metropolitan Police
10 Department submitted an Application and Affidavit for a Search Warrant pursuant to a
11 charge of Luring Children or Mentally Ill Persons. In the application, Officer Boucher lists
12 his extensive training and background in the areas of child pornography and child sexual
13 exploitation. The affidavit lists the property to be seized as all computer and related
14 equipment, sexual paraphernalia, possible witness/victim identification materials, media
15 showing a particular sex and age preference, video equipment, personal property
16 demonstrating control of the premises, information alluding to storage facilities, and
17 "collateral material" including erotica, psychological material, educational material, and
18 intelligence material "from which it could be inferred that a person has planned, or is
19 intending to commit" a sexual crime. Officer Boucher attested that this type of property
20 "constitutes evidence which tends to demonstrate that the criminal offense of Luring Children
21 or Mentally Ill Persons, NRS 201.560 has been committed." (Application Aff. Search
22 Warrant at 4, Docket 14, Ex. A.)

23 The remainder of the affidavit describes these events previously described, and details
24 the relevance of the listed property to an investigation of an individual suspected of

25

1  committing sexual crimes involving children.

2      The warrant was issued, and based on evidence seized during execution of the warrant on October 20, 2004, a federal grand jury returned an indictment against Defendant, charging him with receiving and possessing child pornography.

    On April 1, 2005, Defendant filed an Amended Motion to Suppress Evidence (# 15), arguing that Officer Boucher's warrant affidavit "failed to establish probable cause to believe that images of child pornography would be found on [Defendant's] computers or elsewhere in his residence."

    On June 13, 2005, Magistrate Judge Robert J. Johnston issued a Report and Recommendation (R & R) on Defendant's motion (# 21).  Magistrate Judge Johnston issued his decision without an evidentiary hearing, as he concluded that "[D]efendant has not shown that a significant disputed factual issue exists."  (R & R at 5.)  Magistrate Judge Johnston found that the evidence demonstrated Defendant "has an extreme, sexual interest in children."  (R & R at 7.)   Magistrate Judge Johnston also found that this interest, coupled with Defendant's behavior as a preferential sex offender in this matter, established sufficient probable cause for the property sought in the search warrant.

    Defendant filed three objections (# 23) to Magistrate Johnston's R & R on June 23, 2005.  United States District Judge Robert C. Jones heard arguments on the objections on August 29, 2005, and signed an order adopting Magistrate Judge Johnston's R & R on September 12, 2005 (filed September 15, 2005, entered September 19, 2005).

    Defendant's case was reassigned to new counsel on April 1, 2006, and Defendant now moves the Court to reconsider its September 12, 2005 Order (# 32) overruling Defendant's Objections to Report and Recommendation of U.S. Magistrate Judge (# 23).

## STANDARD OF REVIEW

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual, circumstances warranting reconsideration." Sch. Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993) (internal citation omitted). "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." In re AgriBioTech, Inc., 319 B.R. 207, 209 (D. Nev. 2004).

## DISCUSSION

Defendant does not present any new evidence or argue that there was a change in controlling law, so he must be arguing that the Court committed clear error, that its September 12, 2005 Order was manifestly unjust, or that his particular circumstances warrant reconsideration.

Defendant makes four arguments supporting his motion to reconsider Judge Jones's prior Order: (1) Defendant is entitled to an evidentiary hearing because the officer included false and misleading information in the affidavit in support of a search warrant; (2) the affidavit did not establish probable cause to believe that Defendant was a preferential child sex offender; (3) there was not probable cause to believe that child pornography would be found in Defendant's residence; and (4) the search warrant is invalid because it permitted a search of the entire residence when probable cause only existed for Defendant's room.

The Court previously heard Defendant's second and third arguments.

**I. False and Misleading Information in Affidavit**

Defendant alleges that the officer intentionally or recklessly left out relevant

information and included false or misleading information in the affidavit supporting a warrant in order to make it appear that probable cause to issue the warrant existed. In support of this allegation, Defendant argues that (1) Officer Boucher, the author of the affidavit, is experienced in Internet crime, and therefore should have known that Defendant's discussion with Stephanie could not have taken place according to Stephanie's version of the facts; (2) Officer Boucher left out pertinent facts, and twisted a statenaed by Defendant about a hotel; and (3) Officer Boucher did not adequately describe the photograph sent by Defendant to Ms. Allen (posing as Stephanie).

      A.  <u>Incompatibility of AOL with Yahoo!</u>

Stephanie told Officer Boucher that she chatted with a person using the screen name CARVAGGI@yahoo.com. Defendant asserts that, at the time of the alleged chat, it would have been technologically impossible for a person to use an America On Line (AOL) screen name to chat with a person that uses a Yahoo! screen name, and therefore a detective experienced in Internet crimes should have known that the "chat" could not have taken place as described and should not have included reference to the alleged "chat" in the affidavit.

Defendant does not argue, however, that the "chat" did not take place, that he never met the girls at the pool, or that the girls did not somehow receive an electronic photograph of him. Although the officer may have realized that a person cannot use an AOL screen name to "chat" with a person using a Yahoo! screen name, the electronically delivered photograph served as rather strong evidence that communication over the Internet had taken place. Further, Stephanie gave to police the phone number that her online friend, "Beck," had provided during their conversation. The police subpoenaed the records for that phone number and discovered that the person whose name and address was on the records, Larry Baker, had a son named Beckam was the same age as "Beck" living at the residence.

Stephanie was able to pick out a picture of Defendant, Beckam, from a lineup of four photographs.

These facts, together, serve as strong evidence upon which Officer Boucher could have believed a chat had taken place between Stephanie and Defendant, and that the two had met at some point, despite AOL's incompatibility with Yahoo!. Therefore, it was not misleading for the officer to include information about the chat in the affidavit.

B. <u>Statement About the Hotel</u>

At the August 29, 2005 hearing before Judge Jones, Defendant argued that Officer Boucher twisted Defendant's statement about meeting Stephanie at a hotel. Defendant reasserts this argument in his current motion in a different context.

Defendant argues that Officer Boucher falsely stated in the affidavit that Defendant invited Stephanie to stay the night with him at a hotel. In fact, Ms. Allen (pretending to be Stephanie) requested the meeting with "Beck." Defendant "simply responded that he would be 'work[ing] graveyard at a hotel' and told Stephanie that '[she] can come stay the night at the hotel.'" (Mot. Recons. Suppression Seized Evidence at 6, Docket 43-1.)

Defendant here attempts to take the position that he was going to allow Stephanie to stay the night alone in a room, while he separately performed his duties at the hotel. Officer Boucher very reasonably understood Defendant's statements to mean that Defendant actually desired for Stephanie to come to the hotel, and that during at least some of Stephanie's stay at the hotel, Defendant would be with her. Further supporting this is Ms. Allen's report to the officer that Defendant told her (when she was posing as Stephanie) that she owed him kisses. Accordingly, Officer Boucher's statement in the affidavit that Defendant invited Stephanie to stay the night at a hotel was not intentionally or recklessly misleading.

    C.  The Photograph

Defendant does not dispute Officer Boucher's allegation that Defendant sent to Stephanie a photograph of him in which he was "completely naked, turned to the side, with his back and buttocks exposed." Defendant argues, however, that this description of the photograph in the affidavit misled the judge into believing the photograph was of a sexual nature, when, in fact, it was meant to be a comical "mooning" of the camera.

Defendant does not argue that the description of the photograph is incorrect, and offered no evidence that the officer should have known the photograph was taken for humorous purposes rather than sexual. Even if Officer Boucher knew that the photograph was merely a tasteless joke, the description of the photograph, being a technical description, was not misleading or incorrect.

Defendant argues further that, under Nevada law, the photograph cannot be characterized as nudity. See N.R.S. 201.261. Whether or not the photograph meets Nevada's statutory definition of nudity has no bearing on this issue, as the Court did not understand the photograph to be pornographic.

**II. Preferential Sex Offender**

Defendant argues that the affidavit in support of the warrant did not establish probable cause to believe Defendant was a preferential child sex offender. Defendant made this argument in front of this Court when he opposed the magistrate's recommendation, and offers no new arguments in favor of his position.

Defendant expresses in his Motion to Reconsider Suppression of Seized Evidence (# 43-1) a disagreement with the Court's decision, but nothing more. For its conclusion that "Defendant clearly demonstrated an interest and intent to engage in sexual activities with a child," the Court relied on Defendant's "flirtatious conversations online, his rendezvous with

1  the young girls at the pool (including grabbing the girls' hands and Stephanie's waist), . . . his

2  invitation to Stephanie to meet him during his graveyard shift at a hotel," and "the nude photo

3  Defendant sent to the thirteen-year-old." (Order, Sept. 12, 2005 at 6.)

4        Defendant disagrees with the Court's characterization of Defendant's conversation

5  with Stephanie as "flirtatious." Defendant reports in his Motion to have told Stephanie she

6  "was cute," and that she had a "good" and "funny" personality. (Mot. Recons. Suppression

7  Seized Evidence at 6, Docket 43-1.) But "even according to Stephanie, he told her nothing

8  sexual." (Id.) The Court, however, was not under the impression that this "flirtatious"

9  conversation was overtly sexual in nature, but rather that this conversation, in connection

10 with other evidence, demonstrated more than a fair probability of an interest and intent on

11 the part of Defendant to engage in sexual activities with a child.

12       Defendant does not disagree with the Court's description of the events at the pool, but

13 argues that although "Mr. Baker did play with the girls and other children that were present, .

14 . . [he] never touched any of the girls in an inappropriate or illegal manner." (Id.) This

15 argument is also unpersuasive, as the Court was not under the impression that Defendant

16 performed illegal activities at the pool. The fact that Defendant met with the girls, whom he

17 knew to be 13 years old, and tried to hold their hands and "tickle" one on the waist

18 demonstrated to the Court, in conjunction with other evidence, more than a fair probability of

19 an interest and intent on the part of Defendant to engage in sexual activities with a child.

20       Defendant disagrees with the Court's characterization of the proposed meeting at a

21 hotel as an "invitation to Stephanie" by Defendant. Defendant argues that he did not actually

22 propose the meeting, but insisted that Ms. Allen, posing as Stephanie, requested the meeting.

23 He also never said that Stephanie should stay the night *with him*, merely that she could stay

24 the night at the hotel.

25       Page 8 of  12

1    This argument was discussed above and was discussed in the September 12, 2005
2    Order from this Court. The Court decided that, whether or not the invitation was express or
3    implied, "[t]he mere fact that he invited a thirteen-year-old girl to the hotel where he worked
4    a graveyard shift on the pretense that she 'owe[d] him kisses' is sufficient to justify
5    Magistrate Johnston's conclusions." (Order, Sept. 12, 2005 at 5 (second alteration in
6    original), Docket 32.)

7    Finally, Defendant argues that "the nude photo depicting Mr. Baker 'mooning' the
8    camera has been misconstrued [by the Court] as sexual evidence." (Mot. Recons.
9    Suppression Seized Evidence at 9.) This argument is also unpersuasive. The Court was not
10   mistaken on the facts surrounding the delivery of the photograph or what was shown in the
11   photograph. As discussed above, the photograph demonstrated to the Court, in conjunction
12   with other evidence, more than a fair probability of an interest and intent on the part of
13   Defendant to engage in sexual activities with a child.

**III. Probable Cause to Find Child Pornography at Defendant's Residence**

15   Defendant argues that, because the request to search for child pornography was based
16   on Officer Boucher's false allegation in the affidavit that Defendant is a child sex offender,
17   the search for those items was not warranted. However, as discussed above, the Court did
18   not err in its prior decision that the affidavit established probable cause that Defendant was a
19   preferential sex offender. "As such, according to Officer Boucher's expert testimony, there
20   was more than a fair probability that Defendant possessed child pornography on a computer."
21   (Order, Sept. 12, 2005 at 7, Docket 32.)

22   Defendant argues in response that, even if Defendant were a child sex offender, it
23   does not immediately follow that he possessed child pornography in his home. Defendant
24   argues the Court based one inference upon another to decide Defendant would have child

Page 9 of 12

pornography in his home, and the allegations in the affidavit do not establish that Defendant had an "extreme interest in young children." Rather, Defendant argues, the affidavit supported no more than a bare suspicion that Defendant had an interest in young children.

Once again, however, the Court already addressed this argument in its September 12, 2005 Order:

> The fact that Defendant had utilized a computer to contact a thirteen-year-old and send a nude image of himself to her eliminates almost all doubt that Defendant uses a personal computer to advance his child-sex activities. Additionally, Defendant's availability for contact at his residential phone number immediately following the original computer contact raised a high probability that the computer in question would be found in his home. Therefore, Magistrate Judge Johnston was correct in finding that there was probable cause to search the home and computer for child pornography.

(Order, Sept. 12, 2005 at 7, Docket 32.)

## IV. Breadth of Search Warrant

Defendant argues that the affidavit did not provide probable cause for the resultant search warrant to extend beyond Defendant's room within his residence. The detectives knew that Defendant lived with his parents, but the search warrant authorized a search of the entire residence, including the master bedroom.

This argument is unpersuasive because the police officers and the judge who issued the warrant had cause to believe that the computer used by Defendant would not be in his bedroom. Many homes have only one computer, and the computer could be in the master bedroom. Defendant presented no evidence that Officer Boucher believed Defendant had a computer in his bedroom. For this reason, there was probable cause for the search warrant to extend beyond Defendant's bedroom.

## V. Good Faith Exception

The Court's September 12, 2005 Order also discussed a good faith exception to the

1  exclusionary rule for invalid search warrants:

2      [E]ven if the warrant was not supported by probable cause, the good-faith exception would apply. In <u>United States v. Leon</u>, 468 U.S. 897, 926 (1984), the Supreme Court recognized a good-faith exception to the exclusionary rule. Under this exception," [a] motion to suppress evidence obtained with an invalid search warrant may be denied if the officers who obtained the evidence had a reasonable belief in its validity." U.S. v. Brown, 951 F.2d 999, 1004 (9th Cir. 1991).

6      Given the circumstances previously described, Officer Boucher and the other executing officers clearly had a reasonable belief in the validity of the warrant. . . .

8  (Order, Sept. 12, 2005 at 8–9, Docket 32.)

9  However, suppression of evidence is appropriate if "the officers were dishonest or

10 reckless in preparing their affidavit or could not have harbored an objectively reasonable

11 belief in the existence of probable cause." <u>Leon</u>, 468 U.S. at 926.  Defendant argues that

12 Officer Boucher could not have had reasonably believed that the "chat" between Defendant

13 and Stephanie could have taken place as Stephanie described, and the officer was dishonest

14 or reckless when he confidently presented a statement that Defendant had indeed used a

15 computer to "chat" with Stephanie.  Defendant also argues the officer was dishonest or

16 reckless in his description of the hotel "invitation" and his description of the photo Defendant

17 sent to Stephanie.

18 As discussed above, however, Officer Boucher's belief that Defendant engaged in a

19 conversation with a teenage girl was reasonable, and his descriptions of the hotel "invitation"

20 and the photograph were neither dishonest nor reckless.  Accordingly, even if the search

21 warrant was invalid, the good-faith exception to the exclusionary rule would apply.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion to Reconsider Suppression of Seized Evidence (# 43-1) is DENIED.

DATED: August 3, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE